## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Timothy Connell,**<br><br>　　　　　　**Plaintiff,**<br><br>　　　**-against-**<br><br>**Naked Brand Group Limited, Bendon Ltd., Bendon USA, Inc., and Justin Davis-Rice.**<br><br>　　　　　　**Defendants.** | **Civil Action No.**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Timothy Connell ("Mr. Connell" or "Plaintiff") by his undersigned attorneys, as and for his Complaint against Naked Brand Group Limited (referred to as "Naked Brand Group"), Bendon, Ltd., Bendon USA, Inc. (together referred to as "Bendon") (Naked Brand Group and Bendon referred to as "Corporate Defendants") and Justin Davis Rice ("Mr. Davis-Rice") (all collectively referred to as "Defendants") alleges as follows:

### NATURE OF THE CASE

1.　　　The claims in this case arise, at bottom, from a loan by the Plaintiff to the Corporate Defendants, which was induced by fraud and which devolved further into fraud and misconduct on the Defendants' part.  In the autumn of 2018, Plaintiff lent one million dollars ($1,000,000.00) to the Corporate Defendants – a NASDAQ-listed apparel concern, headquartered in Australia and including entities there and in New York – upon a personal request from the Executive Chairman of the Corporate Defendants, Mr. Davis-Rice.  Mr. Davis-Rice told the Plaintiff that the funds to be lent were for urgent purposes of making payroll in an immediately ensuing period.

2.      The loan was intended and agreed to be short-term, and due for repayment within five days.  The loan was not repaid, at that time or at any time thereafter.  Rather, in the ensuing months, Mr. Davis-Rice instead made a series of representations regarding the Corporate Defendants' ability to repay the loan soon, none of which proved true and some of which are now known to have been false or materially misleading when made.

3.      Thereafter, Mr. Davis-Rice induced Plaintiff to enter into transactions by which his loan to the Corporate Defendants was ostensibly to be converted, at least in part, into shares in the publicly-listed Naked Brand Group, which the Plaintiff could then sell in the market to recoup his funds.  However, Mr. Davis-Rice and the Defendants ultimately did not fully document the transaction as the parties had agreed; rather, Mr. Davis-Rice and the Defendants issued shares to the Plaintiff before the documentation of the proposed transaction was completed – with entire transactional documents necessary to completion left undrafted and unsigned – in an attempt to force the transaction to be completed on terms other than those to which the parties had explicitly agreed.  The shares transferred to Mr. Connell as putative partial satisfaction of his loan to the Corporate Defendants proved to be unregistered and thus untradeable, contrary to the clear terms of the parties' agreement and the fundamental purpose of the proposed transaction.  Another two hundred thousand dollars ($200,000.00), then agreed to be repaid to Mr. Connell in cash, also went unpaid.

4.      These events transpired during a period in which the Corporate Defendants were faltering in its business operations, ostensibly trying to remedy defects in its structure and controls that were revealed in the scrutiny that its public listing entailed, and desperately seeking additional injections of investment capital to satisfy its existing obligations to creditors and maintain the image of a viable and promising going concern that was necessary to avoid a

collapse.  In other words, during this time the Corporate Defendants were transformed from a previously-functioning, if comparatively modest, actual operating business into something more functionally akin to a Ponzi scheme.  The Plaintiff did not know this; but Mr. Davis-Rice did, and induced the Plaintiff to lend one million dollars ($1,000,000.00) to the Corporate Defendants nevertheless.

5.      By engaging in the conduct alleged in this Complaint, Defendants have violated New York State and United States law, including, but not limited to, New York common and equity law, and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

6.      Plaintiff therefore brings this Complaint, for recoupment of his loan to the Corporate Defendants, together with interest and costs, and respectfully requests that the Court enter judgment to that effect.

## **PARTIES**

7.      Plaintiff **TIMOTHY CONNELL** ("Mr. Connell") is an individual resident in Miami, Florida.

8.      Defendant **NAKED BRAND GROUP LIMITED** ("Naked Brand Group") is a NASDAQ-listed Australian company with its principal place of business in Alexandria, NSW, Australia and a registered agent for service of process in New York, New York.

9.      Defendant **BENDON GROUP LIMITED** ("Bendon") is an Australian company with its principal place of business in Alexandria, NSW, Australia.

10.      Defendant **BENDON USA, INC.** ("Bendon USA") is a Delaware corporation with its principal place of business in New York, New York.

11.     Upon information and belief, Defendant **JUSTIN DAVIS-RICE** ("Mr. Davis-Rice") is an individual resident in Sydney, Australia.

## JURISDICTION

12.     Plaintiff brings this Complaint under the Court's federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.  Jurisdiction is also proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

13.     This Court also holds personal jurisdiction over each and every one of the Defendants, as set forth in more detail below.

14.     Plaintiff Timothy Connell is a citizen of New Zealand with his primary place of residence in Miami, Florida.

15.     Defendant Naked Brand Group Limited is an Australian entity publicly listed on NASDAQ.  Pursuant to that listing, it has consented to jurisdiction in New York and has appointed its counsel Graubard Miller as its agent for service of process in New York.

16.     Defendant Bendon Group Limited is an Australian company that is an *alter ego* of Defendants Naked Brand Group Limited and Defendant Bendon USA, Inc., for the reasons set forth in more detail below.

17.     Defendant Bendon USA, Inc. is a New York entity with its principal place of business in New York, New York.

18.     Upon information and belief, Defendant Justin Davis-Rice is a citizen of Australia with his primary place of residence in Sydney, Australia.

19.     Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391 because Defendant Naked Brand Group Ltd. is publicly-listed on an exchange in this District and maintains offices here *via* its subsidiary Defendant Bendon USA Inc., which is also

located in this District; a substantial part of the events or omissions on which the claims asserted herein are premised occurred in this District; and certain subject contracts were executed in this District.

**FACTUAL BACKGROUND**

20.     In October 2018, Mr. Connell was approached by Mr. Davis-Rice, who requested that Mr. Connell extend a loan of one million dollars ($1,000,000.00) to the Defendant Bendon Group Limited.  Mr. Davis-Rice stated to Mr. Connell that the funds were urgently needed in order for the Corporate Defendants to make payroll in an immediately ensuing period.  Despite this need for an urgent injection of funds, Mr. Davis-Rice then stated to Mr. Connell, Naked Brand Group's business was healthy, with operating revenues flowing in and with the ability to use those operating revenues to repay the loan swiftly.  Mr. Connell had known Mr. Davis-Rice for some time and, relying on Mr. Davis-Rice's *bona fides*, agreed to extend the loan in very short order, even in the absence of formal documentation at the time.  Mr. Connell and Mr. Davis-Rice agreed that the loan (the "Connell  Loan") would be for a period of five calendar days, at which time it would be repaid in cash and in full.  In light of Mr. Davis-Rice's agreement to repay the Connell Loan within five calendar days, Mr. Connell did not demand provision for interest on the Connell Loan.  Mr. Davis-Rice instructed Mr. Connell to wire the funds to an account of Naked Brand Group's subsidiary Bendon USA, Inc. at HSBC in New York.

21.     Per the parties' agreement, Mr. Connell transferred the agreed one million dollars ($1,000,000.00) into the designated bank account of Bendon USA on or about October 12, 2018.

22.     Throughout the discussions leading to the issuance of the Connell Loan, in reliance on Mr. Davis-Rice's representation that the need for funds was urgent and on Mr. Davis-

Rice's *bona fides*, and thereafter, Mr. Connell was not represented by counsel.  Upon information and belief, the Defendants were represented throughout, by Nicholas Kovacevich in Australia and by Graubard Miller in New York.

23.     Bendon USA, Inc. is a wholly-owned subsidiary of Naked Brand Group Limited.

24.     In this instance and others, Mr. Davis-Rice and other Corporate Defendants' personnel repeatedly commingled assets and obligations of Naked Brand Group, Bendon, and Bendon USA, disregarded corporate formalities, and failed to maintain the functional separation of the entities, in pursuance of wrongful and fraudulent schemes to solicit funds, and by which Mr. Connell was damaged.  Specifically, Mr. Davis-Rice and other Corporate Defendants' personnel caused certain group entities to undertake liabilities while the benefits of the transactions in question were diverted to other group entities; failed to record substantial transactions, including a similar unpaid loan extended by another individual to the group, on the books of the entities involved; and represented to Plaintiff that funds from the entire group would be made available to repay the loan sought by Mr. Davis-Rice on behalf of Bendon Group Limited but in fact extended to Bendon USA Inc.

25.     Mr. Davis-Rice was then Executive Chairman of Bendon Group, Ltd. and remains so to this day.  Mr. Davis-Rice is also the Chairman and former Chief Executive Officer of Naked Brand Group.

26.     Beginning five calendar days after Mr. Connell deposited the Connell Loan into Bendon USA's designated bank account, Mr. Connell made repeated requests to Mr. Davis-Rice for repayment.  Mr. Davis-Rice responded with a series of assurances that repayment would be made in short order, in each instance referring to either operating revenues or additional investment capital that would ostensibly soon become available to repay the Connell Loan.  On

three separate occasions, in November 2018, January 2019, and May 2019, Mr. Davis-Rice

represented to Mr. Connell that Mr. Davis-Rice for the Corporate Defendants had then

successfully raised several million dollars in capital that would soon be available – in the first

two instances, from investors in Hong Kong, and in the third, from an unnamed source – and that

Mr. Davis-Rice would then ensure prompt repayment of the Connell Loan out of those funds.

27.     These representations were false.  Naked Brand Group's SEC filings show no

such injections of capital on or about the dates of Mr. Davis-Rice's representations to Mr.

Connell; each of Mr. Davis-Rice's assurances disappeared into the ether, with no capital

injections ensuing; and the Connell Loan was not in fact repaid, at that time or any other.

28.     During this same period, in the early winter of 2018, Mr. Davis-Rice proposed

that Mr. Connell accept to receive shares in Naked Brand Group – the publicly-listed member of

the Corporate Defendants, and the third entity whose interests and obligations were commingled

by Mr. Davis-Rice in the course of Defendants' dealings with Plaintiff – which shares Mr.

Connell could then sell on the open market, in lieu of payment in cash.  Mr. Connell entertained

Mr. Davis-Rice's proposal, while clearly maintaining throughout that the Connell Loan was well

past due and Defendants remained obligated to repay the Connell Loan as agreed.

29.     Mr. Connell eventually agreed to this approach in principle, pending the

finalization of terms and formal documentation.  After this initial, tentative agreement in

principle, Mr. Davis-Rice then failed to progress such a transaction for several months, again

leaving Mr. Connell unpaid, despite repeated inquiries from Mr. Connell as to the progress of

either such an arrangement or repayment in cash.

30.     In the event, nearly six months after the extension of the Connell Loan, on March

22, 2019, Mr. Connell and Mr. Davis-Rice, on behalf of Defendants, entered into a

Memorandum of Understanding (the "MOU") in which Defendants agreed to: (a) issue ordinary shares in Naked by March 27, 2019 to a value of $847,671.00 to Mr. Connell or an entity under his beneficial ownership, so that immediately following the issuance of the Naked shares to Mr. Connell or his company, the shares could be sold in the market to realize proceeds at or close to $847,671.00; and (b) by March 31, 2019, Bendon would pay Mr. Connell, or his company, two hundred thousand dollars ($200,000.00) in cash into a bank account designated by Mr. Connell. By its explicit terms, the MOU was binding as to the transaction terms contained therein, but also explicitly contemplated the negotiation and finalization of formal contractual documentation of the agreed share transfer.  In keeping with the temporary, preparatory nature of the MOU, it also lacked a merger clause that might have purported to extinguish claims arising out of the Connell Loan.

31.     Together these amounts laid out in the MOU were intended to constitute repayment of the Connell Loan amount of one million dollars ($1,000,000.00) then due, plus interest to that date.

32.     However, Mr. Davis-Rice did not arrange for the preparation, negotiation and execution of the final share transfer documentation contemplated by the MOU.  Rather, Mr. Davis-Rice procured the issuance to Mr. Connell's nominee and closely-held company, SBL Holdings Ltd., of 853,686 shares in Naked Brand Group, *without* the final documentation that Mr. Connell had expected and that Mr. Davis-Rice had explicitly agreed to provide, reflecting all agreed terms.  Moreover, as Mr. Connell later discovered and as set forth in greater detail below, the issued shares were unregistered and thus non-tradeable, defeating the entire, explicit, agreed purpose of the transaction.  The documentation of the agreement between Mr. Davis-Rice and

Mr. Connell was thus aborted mid-stream, with Mr. Davis-Rice instead surreptitiously and unilaterally forcing a result that was fundamentally contrary to the parties' agreement.

33.     This omission of final documentation concerning the proposed settlement of the Connell Loan was not a mere oversight by the Defendants.  Mr. Davis-Rice then knew, but did not disclose to Mr. Connell, that Naked Brand Group then lacked the ability to pay the two hundred thousand dollars ($200,000.00) due to be paid to him within nine calendar days of the MOU, by March 31, 2019; lacked proper financial controls and contract review functions; had previously had no independent directors and no audit committee, but was then under an obligation to appoint such directors and establish such a committee; was under a warning from its auditors that they could not certify the company's ability to continue as a going concern; and intended to enter into additional issuances of stock that would substantially dilute the value of the shares to be issued to Mr. Connell under the Memorandum if he could not sell them very shortly after receipt of the shares.  Mr. Davis-Rice also then intended to issue to Mr. Connell unregistered and untradeable shares, as discussed further below, such that Mr. Connell could not sell the shares in the open market to recoup his funds, as was the entire purpose of the proposed transaction, and the fundamental term of the parties' initial agreement on the matter.

34.     Mr. Davis-Rice did not disclose these facts, or his intentions, to Mr. Connell. These omitted facts were material to Mr. Connell's decision to accept shares in Naked Brand Group in partial satisfaction of the Connell Loan.  Mr. Connell would not have agreed to the proposal for partial cash repayment and issuance of Naked Brand Group shares, or to the MOU, had he known that the Defendants were unable to pay him the agreed cash amount; that both the payment and the promised issuance of stock for trading would be in the unsupervised hands of Mr. Davis-Rice alone; that despite his short-term Connell Loan of one million dollars

($1,000,000.00) six months before, the Defendants were still on the brink of failure as a going concern; or that the Defendants then intended to enter into additional issuances of stock that would substantially dilute the value of the shares to be issued to Mr. Connell under the MOU if he could not sell them very shortly after receipt of the shares.

35.     Furthermore, as noted above, Mr. Davis-Rice arranged for the shares to be issued to Mr. Connell but had them issued in unregistered form, ensuring that they would be untradeable and that Mr. Connell would be unable to sell them in the market and recover their intended cash value.  This served Mr. Davis-Rice's and the Corporate Defendants' purposes, in that Mr. Connell's inability to sell the shares issued to him would protect Naked Brand Group's share price and ensure that Mr. Connell would remain listed as a shareholder of Naked Brand Group, thus supporting the image of a diversified shareholder base and improving the company's ability to induce others to invest in the company as well.  However, it was a blatant breach of the parties' initial, oral agreement concerning the issuance of the shares to Mr. Connell as partial satisfaction of the company's debt to him under the Connell Loan.

36.     And as noted above, Mr. Davis-Rice for the companies did not disclose his intention in this regard to Mr. Connell, and of course Mr. Connell would not have agreed to accept non-tradeable shares in lieu of full repayment of the Connell Loan in cash had he known of Mr. Davis-Rice's intention.  The MOU was thus procured by fraud, and the transfer of the unregistered and untradeable Naked Brand Group shares to Mr. Connell effected the fraud.

37.     Upon discovering this fact immediately after issuance of the shares, and for months thereafter, Mr. Connell persistently demanded that the shares be registered, so that he could sell the shares on the open market and recoup their value.  Mr. Davis-Rice and the Defendants did not do so.

38.     Meanwhile, the company's share price collapsed from over one dollar per share to $0.02 per share (prior to a December 20, 2019 ten-to-one reverse split).  As a result, Mr. Connell was unable to sell the shares and realize proceeds as the parties had agreed, or at or close to the amount of $847,671.00 per the MOU, and the shares today remain unregistered and untradeable and thus, for Mr. Connell's purposes, effectively worthless.

39.     Additionally, per the MOU, Bendon was to issue a two-hundred thousand dollar ($200,000.00) cash payment to Mr. Connell by no later than March 31, 2019, to satisfy the remainder of the Connell Loan.  This payment, too, was never made.

40.     On December 24, 2019, Plaintiff filed a suit against the Corporate Defendants in this Court (Civil Action No. 19-11785) (the "Original Complaint") seeking damages and recoupment of his Connell Loan.

41.     Less than two days after filing, Mr. Davis-Rice contacted Mr. Connell and promised repayment of the Connell Loan by no later than mid-February, 2020.  Furthermore, Mr. Davis-Rice agreed to be personally liable for the Connell Loan and promised that he himself would repay the loan to Mr. Connell in the event that Corporate Defendants did not do so by mid-February.  This conversation was witnessed by two separate third parties who were also on the telephonic conference call with Mr. Connell and Mr. Davis-Rice.

42.     Given that Mr. Davis-Rice promised payment to Mr. Connell and agreed to be personally liable, and in reliance upon that agreement, Mr. Connell withdrew his complaint without prejudice on December 26, 2019.

43.     Neither the Corporate Defendants nor Mr. Davis-Rice has repaid the Connell Loan.

44.     As of the date of this Complaint, well over a year has passed since Mr. Connell extended the Connell Loan to the Corporate Defendants, and to this present day, Mr. Connell has not received repayment or any other satisfaction of the Corporate Defendants' debt to him under the Connell Loan.

## COUNT 1
## BREACH OF CONTRACT – against Corporate Defendants

(For Defendants' failure to repay the Connell Loan)

45.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

46.     Mr. Connell and Mr. Davis-Rice, on behalf of Defendants, entered into a valid and enforceable contract in October 2018 in which Mr. Connell was to loan one million dollars ($1,000,000.00) to Bendon and in return, Bendon would repay the Connell Loan in cash five days later.

47.     In October 2018, Mr. Connell deposited one million dollars ($1,000,000.00) into a bank account designated to Bendon per the contractual agreement of the Connell Loan.

48.     Corporate Defendants breached its contract with Mr. Connell by failing to repay the Connell Loan as agreed.

49.     Corporate Defendants' breach of contract caused Plaintiff injury and continues to cause Plaintiff injury as repayment has still not been made.

50.     Corporate Defendants' breach of contract has caused Plaintiff damages in the form of loss of the lent funds.

## COUNT 2
## BREACH OF CONTRACT – against Corporate Defendants

(In the Alternative)

(For Defendants' breach of the agreement to issue tradeable shares and partial cash repayment)

51.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

52.     On or about March 22, 2019, Mr. Connell and Mr. Davis-Rice, on behalf of Corporate Defendants, entered into the oral agreement by which Naked Brand Group would effect partial repayment of the Connell Loan in cash and issue registered and tradeable shares in satisfaction of the remaining amount outstanding on the Connell Loan, which shares Mr. Connell would then sell on the open market to recoup the cash value of the shares issued.

53.     Corporate Defendants breached this agreement by failing to issue Mr. Connell ordinary shares in Naked in registered and tradeable form such that he could sell them in the market to realize proceeds.

54.     Corporate Defendants also breached the agreement by failing to pay Mr. Connell two hundred thousand dollars ($200,000.00) in cash.

55.     Corporate Defendants' breach of contract caused Plaintiff injury and continues to cause Plaintiff injury as repayment still has not been made.

**COUNT 3**
**BREACH OF CONTRACT – against Mr. Davis-Rice**

(For Mr. Davis-Rice's breach of the agreement to personally repay the Connell Loan)

56.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

57.     On or about December 24, 2019, Mr. Connell and Mr. Davis-Rice formed an oral contract that Mr. Davis-Rice would be personally liable for the Connell Loan and pay back Mr. Connell.

58.     In turn, Mr. Connell filed a Voluntary Dismissal Without Prejudice and had his Original Complaint against Corporate Defendants withdrawn.

59.     Mr. Davis-Rice never paid back the Connell Loan to Mr. Connell.

60.     Mr. Davis-Rice's breach of contract caused Mr. Connell injury and continues to cause him injury as repayment still has not been made and he is now incurring more legal fees to file this new suit.

### COUNT 4
### PROMISSORY ESTOPPEL – against Corporate Defendants

(In the Alternative)

61.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

62.     A clear and unambiguous promise was made by and between Mr. Connell and Mr. Davis-Rice, on behalf of Corporate Defendants, to repay Mr. Connell the one million dollar ($1,000,000.00) amount that he loaned them. Defendants promised to repay Mr. Connell by the following week.

63.     Mr. Connell relied on Corporate Defendants' promise to repay him the full amount of the Connell Loan by the following week.

64.     Mr. Connell's reliance on Corporate Defendants' promise to repay the Connell Loan resulted in Mr. Connell's injury as he has not been repaid his lent funds.

### COUNT 5
### PROMISSORY ESTOPPEL – against Mr. Davis-Rice

(In the Alternative)

65.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

66.     On or about December 24, 2019, Mr. Connell and Mr. Davis-Rice formed an oral contract that Mr. Davis-Rice would be personally liable for the Connell Loan and pay back Mr. Connell.

67.     Mr. Connell relied on Mr. Davis-Rice's promise to repay him the Connell Loan.

68.     Mr. Connell's reliance on Mr. Davis-Rice's promise to repay the Connell Loan resulted in Mr. Connell's injury as he has not been repaid his lent funds and is now incurring more attorneys' fees to file this new suit.

## COUNT 6
## UNJUST ENRICHMENT – against Corporate Defendants

(In the Alternative)

69.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

70.     Per the contractual agreement of the Connell Loan, Mr. Connell loaned Corporate Defendants one million dollars ($1,000,000.00).

71.     Defendants have yet to repay the one million dollar ($1,000,000.00) Connell Loan and are therefore enriched at Plaintiff's expense.

72.     Defendants' retention of the lent funds is contrary to equity.

## COUNT 7
## FRAUD – against all Defendants

(In the Alternative)

73.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

74.     In inducing Plaintiff to enter into the Connell Loan and the agreement to accept tradeable shares and partial cash repayment in lieu of full cash repayment, Defendants knew but did not disclose to Plaintiff that:

      a.  Corporate Defendants were faltering in its business operations;

      b.  Naked Brand Group lacked the ability to pay back the Connell Loan within the 5 day term;

c.  Naked Brand Group also then lacked the ability to pay the two hundred thousand dollars ($200,000.00) due to be paid to him within nine calendar days of the MOU, by March 31, 2019;

d.  Corporate Defendants lacked proper financial controls and contract review functions;

e.  Corporate Defendants had previously had no independent directors and no audit committee, but was then under an obligation to appoint such directors and establish such a committee;

f.  Corporate Defendants was under a warning from its auditors that they could not certify the company's ability to continue as a going concern;

g.  Corporate Defendants intended to enter into additional issuances of stock that would substantially dilute the value of the shares to be issued to Mr. Connell under the Memorandum if he could not sell them very shortly after receipt of the shares;

h.  Mr. Davis-Rice for Corporate Defendants also then intended to issue to Mr. Connell unregistered and untradeable shares, such that Mr. Connell could not sell the shares in the open market to recoup his funds, as was the entire purpose of the proposed transaction, and the fundamental term of the parties' initial agreement on the matter; and

i.  Mr. Davis-Rice promised to pay back the Connell Loan and agreed to be personally liable for the Connell Loan in order to have the Original Complaint withdrawn.

75.     Defendants knew these facts and knew that these facts were material to Plaintiff's decision whether or not to give the Connell Loan, accept shares and partial repayment in lieu of full cash repayment and have the Original Complaint voluntarily dismissed without prejudice. Defendants further misrepresented their intention to issue tradeable shares to Plaintiff in partial satisfaction of Defendants' debt to Plaintiff, and  knew that their intention to issue non-tradeable shares to Plaintiff was contrary to the fundamental purpose of the transaction then under contemplation by Plaintiff.  Mr. Davis-Rice also misrepresented his intention to personally repay the Connell Loan in order to have Mr. Connell's Original Complaint withdrawn.

76.     These omissions and this misrepresentation were made in order to induce the Plaintiff's reliance, in the form of Plaintiff giving the Connell Loan, Plaintiff's forbearance from commencing enforcement action on the loan, Plaintiff's agreement to accept shares and partial cash repayment in lieu of full cash repayment, and Plaintiff's dismissal of his Original Complaint.

77.     Plaintiff did so rely.

78.     Plaintiff was injured by this reliance, in that the Defendants' issuance of non-tradeable shares and failure to make partial cash repayment frustrated enforcement action at the time and entailed continuing retention by Defendants of the funds lent.  Plaintiff was also injured in that he is incurring more legal fees to pursue this claim.

**COUNT 8**
**VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5**
**THEREUNDER – against Corporate Defendants**

(In the Alternative)

79.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

80.     In inducing Plaintiff to enter into the agreement to accept tradeable shares and partial cash repayment in lieu of full cash repayment, Corporate Defendants knew but did not disclose to Plaintiff that:

    a.   Naked Brand Group then lacked the ability to pay the two hundred thousand dollars ($200,000.00) due to be paid to him within nine calendar days of the MOU, by March 31, 2019;

    b.   lacked proper financial controls and contract review functions;

    c.   had previously had no independent directors and no audit committee, but was then under an obligation to appoint such directors and establish such a committee;

    d.   was under a warning from its auditors that they could not certify the company's ability to continue as a going concern; and

    e.   intended to enter into additional issuances of stock that would substantially dilute the value of the shares to be issued to Mr. Connell under the Memorandum if he could not sell them very shortly after receipt of the shares.

    f.   Mr. Davis-Rice for Corporate Defendants also then intended to issue to Mr. Connell unregistered and untradeable shares, such that Mr. Connell could not sell the shares in the open market to recoup his funds, as was the entire purpose of the proposed transaction, and the fundamental term of the parties' initial agreement on the matter.

81.     Corporate Defendants knew these facts and knew that these facts were material to Plaintiff's decision whether or not to accept shares and partial repayment in lieu of full cash

repayment. Corporate Defendants further misrepresented their intention to issue tradeable shares to Plaintiff in partial satisfaction of Corporate Defendants' debt to Plaintiff, and knew that their intention to issue non-tradeable shares to Plaintiff was contrary to the fundamental purpose of the transaction then under contemplation by Plaintiff.

82.     These material omissions and this material misrepresentation were made in connection with the transfer to Plaintiff of equity shares in the publicly-listed Naked Brand Group Ltd.

83.     These omissions and this misrepresentation were made in order to induce the Plaintiff's reliance, in the form of Plaintiff's forbearance from commencing enforcement action on the loan and Plaintiff's agreement to accept shares and partial cash repayment in lieu of full cash repayment.

84.     Plaintiff did so rely.

85.     Therefore, Corporate Defendants, with scienter, in connection with the purchase or sale of securities as set forth above, directly or indirectly made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading by the use of the means or instrumentalities of interstate commerce, and of the mails, and the facilities of a national securities exchange.

86.     Plaintiff was injured by the foregoing reliance, in that the Corporate Defendants' issuance of non-tradeable shares and failure to make partial cash repayment frustrated enforcement action at the time and entailed continuing retention by Corporate Defendants of the funds lent, proximately causing Plaintiff's loss.

87.     By reason of the foregoing, Corporate Defendants violated Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder, [17 C.F.R. § 240.10b-5].

**COUNT 7**
**EQUITABLE RESCISSION**

(In the Alternative)

88.     In the event that the Connell Loan between Plaintiff and Corporate Defendants is held invalid or unenforceable, and the agreement to accept shares and partial cash repayment in lieu of full cash repayment is held valid and enforceable to the exclusion of relief at law, Plaintiff cannot be reasonably compensated at law.

89.     Rescinding the latter agreement, in that event, will restore the parties to their original position.

90.     Rescinding the latter agreement, in that event, would be consistent with equity.

**DAMAGES**

91.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

92.     As a result of Defendants' aforementioned conduct, Mr. Connell has been damaged and continues to be damaged, in that he has not recouped the funds lent or interest thereon.

**JURY DEMAND**

93.     Plaintiff demands trial by jury.

**PRAYER FOR RELIEF**

Therefore, based on the foregoing, Plaintiff respectfully prays that:

1.     Defendants be cited to appear and answer herein;

2.      Plaintiff be awarded judgment against Defendants for all of his damages as described herein;

3.      Plaintiff be awarded pre-judgment and post-judgment interest as provided for under New York law;

4.      Plaintiff recover all costs of suit; and

5.      Plaintiff recover such other and further relief, at law or in equity, to which he may be justly entitled.

Case 1:20-cv-02528-JGK   Document 1   Filed 03/24/20   Page 22 of 22

DATED:    March 24, 2020                    Respectfully submitted,

                                           **KING & WOOD MALLESONS LLP**


                                           By:  */s/ Vincent Filardo, Jr.*
                                           _____

                                               Vincent Filardo, Jr.
                                               Aaron T. Wolfson
                                               500 Fifth Avenue, 50th Floor
                                               New York, NY 10110
                                               (212) 319-4755

                                               **DYKEMA GOSSETT PLLC**

                                               Timothy J. McCarthy
                                               NY State Bar No. 3996345
                                               Comerica Bank Tower
                                               1717 Main Street, Suite 4200
                                               Dallas, Texas 75201
                                               Telephone: (214) 462-6400
                                               Fax: (214) 462-6401
                                               TMcCarthy@dykema.com

                                               **ATTORNEYS FOR PLAINTIFF**
                                               **TIMOTHY CONNELL**